Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

JS-6

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 4196 | **DATE** | 6/21/2001 |
| **CASE TITLE** | OKWUMABUA vs. ADA S. MCKINLEY COMMUNITY SERVICES | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: there is no genuine issue of material fact on any of the claims plaintiff asserts against defendant for national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et seq. Defendant is therefore, entitled to judgment as a matter of law on all of plaintiff's claims. Defendant's motion for summary judgment is granted and the motion to strike is denied. This is a final and appealable order.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUN 25 2001 | |
| | Notified counsel by telephone. | date docketed | 39 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| ✓ | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | |
| | Copy to judge/magistrate judge. | 01 JUN 21 PM 2:55 | date mailed notice |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUN 25 2001

KAFONDI OKWUMABUA,

    Plaintiff,

v.

ADA S. MCKINLEY COMMUNITY
SERVICES, INC.,

    Defendant.

No. 98 C 4196
Paul E. Plunkett, Senior Judge

JUN 2 5 2001

## MEMORANDUM OPINION AND ORDER

Kafondi Okwumabua has sued Ada S. McKinley Community Services, Inc., for its alleged violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Defendant has filed a Federal Rule of Civil Procedure ("Rule") 56(c) motion for summary judgment and plaintiff has filed a motion to strike certain materials submitted by defendant. For the reasons set forth below, the summary judgment motion is granted and the motion to strike is denied.

### Motion to Strike

Defendant has submitted an affidavit of the court reporter who transcribed plaintiff's deposition, in which she says that she had difficulty understanding plaintiff at various points during the deposition. Plaintiff contends that: (1) the affidavit; (2) paragraph 96 of defendant's fact statement, which is based on the affidavit; (3) paragraph 97 of defendant's fact statement, which lists the number of times that plaintiff was asked by the court reporter or counsel to repeat statements or to speak more slowly; and (4) two lines of defendant's memorandum, which cite to the contested fact

statements, contain "inappropriate matter" and should be stricken. The Court did not, however, rely on any of the challenged material in reaching its decision on defendant's summary judgment motion. Plaintiff's motion to strike is, therefore, denied as moot.

**Summary Judgment Motion**

### Facts[1]

Plaintiff, who was born in Nigeria, was hired by defendant in 1996 as a probationary Qualified Mental Health Professional ("QMHP") in its Intervention Services Division. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 2, 8, 30, 41-42.) Plaintiff applied for the position with defendant on the recommendation of Leatrice Allen, a woman with whom he had previously worked. (Id. ¶¶ 7, 9.) Allen and Phil Ware, defendant's Clinical Director, conducted the first interview of plaintiff. (Id. ¶¶ 11, 46; Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 11.) Afterwards, plaintiff was invited back for a second interview with Mark Moses, defendant's Director of Intervention Services. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 13, 15.) Moses knew before the interview that plaintiff was not a native of the United States and learned during the interview that plaintiff was a native of Nigeria. (Id. ¶¶ 16-18, 26; id., Ex. E.) After the interview, Moses recommended that plaintiff be hired. (Id. ¶ 28.)

Defendant classifies some of its QMHPs as Crisis Intervention Specialists, who, as the title implies, concentrate on crisis intervention rather than ongoing therapy with clients. (Id. ¶ 34.) The basic function of a Crisis Intervention Specialist is to assess children in psychological crisis to determine whether they need hospitalization. (Id. ¶ 35.) After he was hired, defendant asked plaintiff to become a Crisis Intervention Specialist. (Id. ¶ 36.) Plaintiff agreed to assume this

---

[1]Unless otherwise noted, these facts are undisputed.

position, which netted him higher pay than the basic QMHP position. (Id. ¶¶ 36-37.) Moses approved plaintiff's assignment to the Crisis Intervention Specialist position. (Id. ¶ 38.)

Plaintiff was one of two Crisis Intervention Specialists who were assigned to perform assessments by the on-call supervisor. (Id. ¶ 55.) To assure prompt response to crises, defendant adopted the "four-hour rule," which requires the Crisis Intervention Specialists to perform an assessment within four hours of an initial call for service. (Id. ¶ 56.)

In late December 1996 or early January 1997, Allen, who was acting as the on-call supervisor, received a call about a nine-year old child who need to be assessed. (Id. ¶¶ 57-58.) When Allen told plaintiff to perform the assessment, he was reluctant to do so because of bad weather. (Id. ¶ 58.) Allen discussed the situation with Ware, who said that plaintiff would be deemed insubordinate if he did not perform the assessment. (Id. ¶ 60.) After Allen relayed that information to plaintiff, he performed the assessment. (Id.) Allen could have recommended that plaintiff be terminated for this incident. (Id. ¶ 61.) She did not. Instead, she emphasized to plaintiff that he was required to go out and perform assessments whenever he was assigned to do so by the on-call supervisor. (Id. ¶ 62.)

On February 21, 1997 at approximately 11:00 p.m., Ramona Herte, who was acting as the on-call supervisor, received a call about a child in McCormick house, a residential facility in defendant's service area, who needed an assessment. (Id. ¶¶ 63-67.) Herte claims that she started paging plaintiff, who was on call that night, between 11:15 p.m. and 11:30 p.m, but got no response. (Id. ¶ 68.) Plaintiff denies receiving any of those pages. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 68.) An hour later, when she still had not reached plaintiff, Herte called Ware. (Id. ¶ 69; Def.'s LR 56.1(a)(3)

-3-

Stmt. ¶ 69.) When Ware paged plaintiff, he responded. (Def.'s LR 56.1(a)(3) Stmt. ¶ 70.) Ware instructed Herte to page plaintiff again and when she did so, he responded immediately. (Id. ¶ 71.)

When Herte spoke to plaintiff she told him to go to McCormick house to perform the assessment. (Id. ¶ 73.) Plaintiff told Herte that he recognized the name of the child and that he thought the case had already been assigned to another therapist. (Id. ¶ 74.) Plaintiff claims that Herte told him: (1) he should not go out that night because the weather was bad; and (2) he should do the assessment in the morning only if he was unable to reach the therapist assigned to the case. (Id. ¶¶ 75, 77.) Herte denies making those statements and says she thought plaintiff would leave for McCormick House as soon as their conversation ended. (Id. ¶ 76.)

The next morning, someone from McCormick House called Herte to report that no assessment had been done. (Id. ¶ 78.) She once again paged plaintiff, but got no response. (Id.) Herte called Ware, who told her to send another Crisis Intervention Specialist. (Id. ¶ 79.) When the second specialist arrived at McCormick House, plaintiff was there. (Id. ¶ 80.) The second specialist called Herte and gave the phone to plaintiff. (Id.) Herte says plaintiff was hostile to her during that conversation. (Id. ¶¶ 81, 82.) Later that day, Herte told Ware that plaintiff had not performed an assessment as directed and had been hostile to her. (Id. ¶ 82.)

A few days later, plaintiff was called to a meeting with Moses, Ware, Allen, Herte and his immediate supervisor, Lisa Parks-Johnson. (Id. ¶¶ 44, 87.) During the meeting, plaintiff and Herte each told their version of the McCormick House incident. (Id. ¶¶ 88-90.) According to plaintiff, Moses made the following statement during this meeting: "Kafondi, no one can understand the way you talk. For example, when you got excited a few minutes ago, it got worse because no one understood what you were saying." (Id. ¶ 94.) Ultimately, Moses credited Herte's version of events,

suspended plaintiff for two days, placed him on a disciplinary action plan and extended his probationary period for two more months. (Id. ¶¶ 41-42, 99.)

On March 13, 1997 at 12:18 a.m., Dr. Dardas of Bethany Hospital called defendant's answering service to request an assessment. (Id. ¶¶ 100, 102.)[2] The answering service delivered the message to on-call supervisor Will Winfrey at 12:28 a.m. (Id. ¶ 103.) Winfrey spoke to Dr. Dardas and then paged plaintiff. (Id. at 107.) Winfrey says he spoke to plaintiff between 12:45 a.m. and 1:00 a.m. (Id. ¶ 108.) Plaintiff says Winfrey did not call him until 2:00 a.m. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 108.) Regardless of the time, Winfrey told plaintiff to go to Bethany Hospital to perform the assessment and gave plaintiff directions to the hospital. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 109, 110.)

After speaking with Winfrey, plaintiff called Dr. Dardas to verify the directions. (Id. ¶ 110.) Because plaintiff believed Bethany Hospital was in an unsafe area, he also asked the child's parents if they would move him to another location for the assessment. (Id. ¶¶ 115-16.)

At 2:37 a.m., Dr. Dardas again called defendant's answering service and left the following message: "cannot meet at another hospital, cannot leave ER, must be interviewed there . . . ." (Id. ¶ 117-18.) That message was delivered to Winfrey at 2:45 a.m. (Id. ¶ 119.)

After receiving the message, Winfrey called Dr. Dardas, who complained that no one had yet arrived to do the assessment. (Id. ¶ 120.) Winfrey again called plaintiff and told him that Bethany was safe and that he had to do the assessment there. (Id. ¶ 121-24.) After this call, plaintiff went to Bethany to perform the assessment. (Id. ¶ 126.)

---

[2]It is undisputed that plaintiff was discharged on March 24, 1997. (See Pl.'s LR 56.1(B)(3)(A) Stmt. ¶ 130.) Thus, the incident described by defendant in paragraph 100 of its fact statement occurred on March 13, 1997, not March 13, 1998 as the fact statement erroneously states.

The parties dispute when the assessment itself was completed, but there is no dispute that plaintiff finished the assessment sheet at 5:40 a.m, more than five hours after Dr. Dardas' initial request for service. (Def.'s Resp. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 170.)

On March 24, 1997, Ware prepared a request to terminate plaintiff. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 130-31; id., Ex. S.) The request says that plaintiff was being terminated because "[o]n March 13, 1997, [he] was directed to conduct a crisis assessment by the on-call manager at a specific location. Subsequently, [he] delayed providing services while he attempted to divert client to another location. Prior infractions and failure to comply with expectations have been documented." (Id., Ex. S.) The termination request was approved by Moses and was effective March 25, 1997. (Id.)

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. Id.

## Discussion

Plaintiff contends that his suspension and subsequent termination were the products of national origin discrimination. Plaintiff can prevail on these claims either by producing direct evidence of discrimination or by using the <u>McDonnell Douglas</u> burden-shifting method of proof. <u>Gonzalez v. Ingersoll Milling Machine Co.</u>, 133 F.3d 1025, 1031 (7th Cir. 1998). Plaintiff attempts to do both.

As direct evidence of discrimination, plaintiff offers four statements made to or about him by Moses.[3] The first, Moses' request that plaintiff provide proof of his legal residence in the United States, does not evidence discrimination. As defendant points out and plaintiff admits, Moses was required by federal law to request that information from plaintiff. (See Pl.'s LR 56.1(b)(3)(A) Stmt. ¶¶ 20-21); 8 U.S.C. § 1324a. The second statement that plaintiff says betrays discriminatory intent is Moses' comment that plaintiff is difficult to understand, particularly when he becomes excited. The Court disagrees. Moses did not say that plaintiff was difficult to understand because he was Nigerian or because he had a Nigerian accent. He simply said that plaintiff's speech is difficult to understand. Absent some evidence to suggest that Moses' comment was a veiled reference to plaintiff's accent or national origin, rather than to the speed, tone or volume of his speech, this comment does not support an inference of discrimination.[4] Moses' last two statements, that

---

[3]The parties apparently agree that Moses, the Division Director who approved Ware's request to terminate plaintiff, was the ultimate decision maker in this case. (See Def.'s Mem. Supp. Mot. Summ. J. at 4-5; Pl.'s Resp. Def.'s Mot. Summ. J. at 6-7.)

[4]Though plaintiff claims that Moses "directly ridiculed [his] Nigerian accent," (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 161), there is no evidence to suggest that he did. Rather, as his deposition testimony indicates, plaintiff *interpreted* Moses' comment as an anti-Nigerian taunt, though Moses said nothing about plaintiff's accent or birthplace. (See App. Pl.'s Exs., Okwumabua Dep. at 157.)

"[Plaintiff] did not have any rights at McKinley" and that "the only place [Plaintiff] could go for help was a place in the United States that helps its citizens," also do not further plaintiff's cause. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 159-60.) The former statement does not refer, even obliquely, to plaintiff's national origin. Neither does the latter, which, to the extent it means anything at all, suggests that Moses believed plaintiff was a citizen of the United States or had the same rights as a United States citizen. In short, the record contains no direct evidence of discrimination. Thus, plaintiff must satisfy the McDonnell Douglas burden-shifting method of proof if he is to defeat this motion. Gonzalez, 133 F.3d at 1031.

To do so, plaintiff must first establish a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he was meeting defendant's legitimate expectations; (3) he suffered an adverse employment action; and (4) defendant treated similarly situated employees outside the protected class more favorably. Id. at 1032. After the prima facie case is established, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment decisions. Id. If defendant carries its burden, plaintiff must show that the proffered reasons for the challenged employment decisions are merely a pretext. Id.

There is no dispute that plaintiff, who is Nigerian and was suspended and terminated by defendant, meets the first and third elements of the prima facie case. Defendant contends, however, that he does not meet the fourth element because there is no evidence that it treated similarly situated, non-Nigerian employees more favorably.[5] Plaintiff, of course, disagrees. He contends that three non-Nigerian Crisis Intervention Specialists, Bob Purse, Carol DiPace Greene and "Keith",

---

[5]Defendant also contends that plaintiff was not meeting its legitimate expectations, and thus, does not meet the second element of the prima facie case. Because we agree that he does not meet the fourth element, however, we need not address this contention.

were treated more favorably than he. Specifically, he says that Purse was suspended for only one day when he refused to perform an assessment and received no discipline for failing to respond to pages, and that DiPace Greene and Keith received no discipline when they "took several hours to conduct an assessment."[6] (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 174-75.)

Defendant's treatment of these non-Nigerian employees is relevant, however, only if they are situated similarly to plaintiff. To determine whether employees are similarly situated, "a court must look at all relevant factors." Radue v. Kimberly Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000). In disciplinary cases, like this one, plaintiff must show that his performance, qualifications, and conduct are similar to those of other employees who were treated more favorably. Id. Generally, employees are similarly situated if they "deal[] with the same supervisor, [are] subject to the same standards, and . . . engage[] in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Id. at 617-18.

Plaintiff has adduced no facts to suggest that he is situated similarly to Purse, DiPace Greene or Keith. Though all four are or were crisis intervention specialists, there is no evidence that Purse, DiPace Greene or Keith were probationary employees, as plaintiff was, when they committed the infractions plaintiff cites. There is also no evidence that Purse, DiPace Greene or Keith had the same supervisor as plaintiff or were governed by the rules and procedures that were applicable to Crisis Intervention Specialists during plaintiff's tenure in that position. Finally, there is no evidence that Purse, DiPace Greene or Keith had the same disciplinary history as plaintiff, who had been counseled to comply with the on-call supervisor's instructions before he was suspended for failing to do so and

---

[6]Though plaintiff does not say so explicitly, the Court assumes that DiPace Greene and Keith's extended assessments violated the four-hour rule.

was on a disciplinary plan of action when he was terminated for violating the four-hour rule. (See Def.'s LR 56.1(a)(3) Stmt. ¶¶ 57-58, 60-63, 66-90, 98-136; Pl.'s LR 56.1(b)(3)(A) Stmt. ¶¶ 57-58, 60-63, 66-90, 98-136.)) Because plaintiff has not demonstrated that he was situated similarly to Purse, Di Pace Greene or Keith or that any other non-Nigerian Crisis Intervention Specialist was treated more favorably than he, he has not satisfied the fourth element of his prima facie case. Defendant is, therefore, entitled to judgment as a matter of law on the national origin discrimination claims plaintiff asserts against it.

## Conclusion

For the reasons set forth above, there is no genuine issue of material fact on any of the claims plaintiff asserts against defendant for national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Defendant is, therefore, entitled to judgment as a matter of law on all of plaintiff's claims. This is a final and appealable order.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

DATED: 6-21-01

-10-